**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEITH VERNON DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs | ) | Civil Action No. 3:21-135 |
| | ) | |
| | ) | Magistrate Judge Dodge |
| BARRY SMITH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

## I.    Recommendation

It is respectfully recommended that Defendants' Motion to Dismiss (ECF No. 37) be granted in part and denied in part.

## II.    Report

Plaintiff, Keith Vernon Davis ("Davis"), a prisoner who is incarcerated in the State Correctional Institution at Houtzdale, Pennsylvania ("SCI Houtzdale"), brings this pro se civil rights action against ten employees at SCI Houtzdale (Facility Manager Barry Smith, Unit Counselor Amy Ginter, Unit Managers C.S. Miller and Daniel Mowrey, PREA[1] Compliance Officer Michelle Ivicic, Deputy Superintendent of Facility Management David Close, Building Major Joel Barrows, Grievance Counselor Susan Hnatkovich, Corrections Officer Rooney and Correctional Security Lieutenant S. Woomer) (collectively referred to as the "Corrections Defendants"), as well as another prisoner, Shawn Clancy, and two "John Doe" correctional officer defendants.

Davis's claims arise out of Clancy's destruction of his property, followed by Clancy's

---

[1] PREA stands for Prison Rape Elimination Act.

false accusation of Davis of inappropriately touching him. This resulted in Davis being sent to the Restricted Housing Unit ("RHU") and held there even after he was exonerated from the false charges. He further alleges that some of his property was not brought to him in the the RHU and that he suffered retaliation after filing this case.

### A. Procedural History

Davis initiated this action on May 6, 2021 in the United States District Court for the Middle District of Pennsylvania by submitting a Complaint without the filing fee or a motion to proceed in forma pauperis. He then paid the filing fee and the case was subsequently transferred to this Court. In response to a previously filed motion to dismiss, Davis filed an Amended Complaint that eliminated some of the defendants, added others and revised some of the claims asserted (ECF No. 41).

Federal question jurisdiction is based on the civil rights claims, which Davis asserts under the First, Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983. He also cites the Privileges and Immunities Clause of Article IV, § 2; the Oath or Affirmation Clause of Article VI; 42 U.S.C. §§ 1981, 1985, 1986 and 2000d, the Americans With Disabilities Act (ADA), various provisions of the Pennsylvania Constitution and the "Pennsylvania Restatement (Second) of Torts." Finally, he asserts state law claims of negligence, willful misconduct and intentional infliction of emotional distress.

Currently pending before the Court is a motion to dismiss filed by the Corrections Defendants (ECF No. 37), which has been fully briefed (ECF Nos. 38, 60). For the reasons that follow, their motion should be granted in part and denied in part.

### B. Factual Background

Davis alleges that, on January 29, 2021, Clancy, who had recently been assigned as his

2

cellmate, informed him that he had broken Davis's television while jumping down from the top bunk. Davis informed Unit Counselor Amy Ginter and Clancy promised to repay him for the broken television. A few weeks later, Clancy told Davis that his sister or girlfriend would be depositing the funds in Davis's prison account. Two days later, however, Davis was seized while in the infirmary and placed in the RHU because Clancy had filed a PREA complaint against him. (Am. Compl. ¶¶ 1-5) (ECF No. 41.)

On February 17, 2021, the Program Review Committee ("PRC"), consisting of Michelle Ivicic, David Close and Joel Barrows, came to Davis's cell door in the RHU and asked if he was aware of why he had been placed there. He told the PRC members that Clancy had filed a false PREA complaint against him to avoid paying for his broken television. Subsequently, when his personal property was brought to him in the RHU by Corrections Officer Rooney and two "John Doe" Corrections Officers, Davis noted that numerous items were missing. But when he sent a form to Unit Manager, C.S. Miller, about this issue, Miller responded "I cannot verify." Davis then filed a grievance, but it was rejected by Grievance Officer Hnatkovich on the ground that he failed to attach a Personal Property Inventory form, which he could not provide because the officers who packed his property did not give it to him. (*Id.* ¶¶ 6-9, 25.)

On March 25, 2021, a Pennsylvania State Police investigator interviewed him concerning the PREA complaint. Davis states that the investigator concluded that Clancy's allegations were unsubstantiated and submitted a report to that effect to Correctional Security Lieutenant S. Woomer. Davis alleged that in violation of DC-ADM 802, however, Woomer kept Davis in the RHU after the investigation was completed. On May 17, 2021, slightly more than 90 days after being placed in the RHU, Davis was released back into the prison general population. (*Id.* ¶¶ 10-11.)

Davis alleges that after he commenced this lawsuit in May of 2021, his visitation privileges were terminated without any valid justification. He does not allege who did so. Then, on November 15, 2021, hours after he submitted a grievance regarding the termination of his visitation privileges, Unit Manager Daniel Mowrey tried to get him to withdraw it and became angry when he insisted that it be answered. Ultimately, his visitation privileges were reinstated on December 3, 2021, but in the meantime, he missed ten visits. (*Id.* ¶¶ 12-14.)

On December 7, 2021, Block Officer Hagen[2] informed Davis that he was being moved from the bottom bunk to the top bunk, despite paperwork indicating that he was assigned to the bottom bunk, bottom tier, for medical reasons. Hagen told him that SCI Houtzdale no longer recognized his medical restrictions and took away his cane, although his medications and diabetic snack were not discontinued. Several days later, Unit Manager Mowrey informed him that his "paperwork had expired" and threatened to move him off G Block if he filed a grievance about the matter.[3] On December 21, 2021, his bottom bunk (but not bottom tier) restriction was reinstated. (*Id.* ¶¶ 15-18.)

Davis is African American and physically disabled. He asserts that he is serving a sentence based on a wrongful conviction for sexually assaulting a minor. He notes that SCI Houtzdale is located in a rural, overwhelmingly white area of Pennsylvania that is staffed almost entirely by Caucasian correctional officials. Davis asserts that white officials treated him with personal contempt and complete disregard for basic human dignity and decency, far different than their interactions with and treatment of white prisoners. (*Id.* ¶¶ 19-21.)

---

[2] Hagen is not named as a defendant.

[3] G Block is a specially created housing unit for veterans that is funded by the U.S. Department of Veterans Affairs and overseen by the state Veterans Coordinator of Pennsylvania. It is designed to assist veterans with open access to psychological treatment and emotional support, substance abuse treatment, behavioral modification, vocational rehabilitation and social services programs.

C. **Discussion**

1. Standard of Review

Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "This requires a plaintiff to plead "sufficient factual matter to show that the claim is facially plausible," thus enabling "the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). While the complaint "does not need detailed factual allegations ... a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

As noted by the Court of Appeals for the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged.

The Supreme Court has stated that "the allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

2.  Dismissal of Certain Non-cognizable Claims

As outlined below, several of the causes of action pleaded by Davis in the Amended Complaint should be summarily dismissed because they invoke inapplicable statutes as a basis for relief or otherwise fail as a matter of law.

First, Davis asserts a claim under the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution, which provides: "The citizens of each state shall be entitled to all privileges and immunities of citizens in several states." "The Clause is designed to prevent the discriminatory treatment of citizens from other states." *A.L. Blades & Sons, Inc. v. Yerusalim*, 121 F.3d 865, 869 (3d Cir. 1997). It has no bearing on the allegations made in this case, however, in which all of the defendants are alleged to be Pennsylvania citizens. Thus, this claim should be dismissed with prejudice as amendment would be futile.

Davis's claim under the "Oath or Affirmation clause" should also be dismissed. This clause provides that: "The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution." U.S. Const. art. VI, cl. 3. As Davis cannot assert a cause of action regarding this clause, this claim also should be dismissed with prejudice as amendment would be futile.

Further, Davis does not allege that there has been an interference with a private contract or with federal officials or court proceedings, which are necessary prerequisites to bringing an action under 42 U.S.C. § 1981. *See Brown v. Philip Morris Inc.*, 250 F.3d 789, 798 (3d Cir. 2001) (claim dismissed because no deprivation of contract or property rights was involved). Therefore, he cannot state a claim under § 1981 and it should be dismissed with prejudice because amendment would be futile.

Davis's claim under Title VI of the Civil Rights Act of 1964 should also be dismissed. Title VI states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Generally, "[i]ndividual liability may not be asserted under Title VI." *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011) (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003)); *Shannon v. Lardizzone*, 334 F. App'x 506, 508 (3d Cir. 2009); *Bethea v. Roizman*, 2012 WL 2500592 (D.N.J. June 27, 2012) ("Individual liability may not be asserted under Title VI because an individual is not a 'program' receiving federal funds."). Here, because Davis only asserts individual liability, his Title VI claim should be dismissed with prejudice and without leave to amend.

3. Section 1985 and 1986 Claims

Davis attempts to assert a claim under 42 U.S.C. § 1985(3),[4] which relates to conspiracies to deprive persons of rights or privileges under the Fourteenth and Fifteenth Amendments. In connection with a claim of this nature, the Supreme Court has held that a plaintiff must "allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-*

---

[4] Subsections (1) and (2) of § 1985 are inapplicable here. The Corrections Defendants have not explicitly addressed Davis's claims under §§ 1985 and 1986. Nevertheless, because Davis is a prisoner seeking redress from employees of a government entity, the Court is required to screen the Complaint for allegations that, inter alia, fail to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A.

*CIO v. Scott*, 463 U.S. 825, 828-29 (1983).

Although Davis alleges generally that the Corrections Defendants violated his rights based on his status as an African American, he fails to make any specific factual allegations that support the existence of a conspiracy or any acts in furtherance thereof. Thus, he has not stated a claim under § 1985. *See Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006) ("a plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious.") In addition, as discussed below with respect to §1983, Congress did not expressly abrogate sovereign immunity when it enacted § 1985. *See Owens v. Armstrong*, 171 F. Supp. 3d 316, 330 (D.N.J. 2016).

A complaint that contains no valid § 1985 claim also fails to state a claim under § 1986. *See Clark v. Clabaugh,* 20 F.3d 1290, 1295 & n.5 (3d Cir. 1994). Therefore, both of these claims should be dismissed. However, because it cannot be concluded that amendment would be futile if Davis can allege specific acts that he claims to represent a conspiracy, dismissal should be without prejudice.

4. ADA Claim

Davis also asserts a claim against Mowrey and Smith under Title II of the ADA. Title II prohibits discrimination by public entities, including state prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208-09 (1996). To state a claim, a plaintiff must sufficiently plead that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Geness v. Admin. Off. of Pennsylvania Cts.*, 974 F.3d 263, 273 (3d Cir. 2020) (citation omitted), *cert. denied sub nom.*

*Geness v. Pennsylvania*, 141 S. Ct. 2670 (2021). *See* 42 U.S.C § 12132.

The Corrections Defendants argue that Title II of the ADA does not provide for suits against state officials in their individual capacities. They are correct. *See Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015).[5]

The Corrections Defendants also contend that that Davis fails to allege any specific facts that state a cause of action under the ADA. However, Davis has alleged that he is disabled and that his cane and lower bunk designation were eliminated without cause by Correctional Officer Hagen, a decision later endorsed by Mowrey, who claimed that his "paperwork had expired" and threatened to move him off the G Block. While Hagan is not a party, the allegations of the Amended Complaint, construed in the light most favorable to Davis, appear to state a claim against Mowrey either for denial of services or being subjected to discrimination by reason of his disability. *See Graham v. Pennsylvania Dep't of Corr.*, 2022 WL 2276580, at *7 (W.D. Pa. Apr. 5, 2022), *report and recommendation adopted*, 2022 WL 2275490 (W.D. Pa. June 23, 2022) (refusing to dismiss ADA claim based on prison's denial of plaintiff's hormone replacement therapy for gender dysphoria when defendants did not address the required three-part test).

At the same time, the allegations of the Amended Complaint do not state a claim against Smith under the ADA. Davis fails to identify any personal involvement on Smith's part that could plausibly represent a denial of services or discrimination based on his disability. As the Court cannot conclude that amendment would be futile, however, the ADA claim against Smith should be dismissed without prejudice.

Therefore, with respect to the ADA claim, the motion to dismiss should be granted with

---

[5] Whether Davis could state an ADA claim against any of the Corrections Defendants in their official capacities in order to recover monetary damages is a complex issue that they do not address and goes beyond the scope of a motion to dismiss. See, e.g., *Anderson v. Bickell*, 754 F. App'x 113, 119 n.5 (3d Cir. 2018).

prejudice with respect to defendants Mowrey and Smith in their individual capacities. The motion to dismiss Mowrey in his official capacity should be denied. Smith's motion to dismiss should be granted without prejudice and with leave to amend, but only to assert a claim against him in his official capacity. Any amendment must include specific facts that allege Smith's personal involvement in an alleged violation of the ADA.

5.   Section 1983 Claims

Davis's civil rights claims are primarily asserted under Section 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). *See also Baker*, 443 U.S. at 140; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

The Amended Complaint alleges violations of the First Amendment, which, among other things, prohibits retaliation for exercising free speech rights;[6] the Eighth Amendment, which prohibits "cruel and unusual punishment"; and the Fourteenth Amendment, which prohibits a state actor from depriving "any person of life, liberty, or property, without due process of law" or

---

[6] Although Davis references the First Amendment petition clause, a liberal construction of his Complaint reflects that he intends to allege a First Amendment retaliation claim. The Corrections Defendants address this claim as one of retaliation and the Court likewise will do so.

the "equal protection of the laws."

a. Official Capacity Claims

Davis has brought suit against all defendants in both their official and individual capacities. The Corrections Defendants argue that the official capacity claims must be dismissed based on Eleventh Amendment immunity.

The Supreme Court has stated that, under the Eleventh Amendment, "federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (internal citation omitted). The immunity applies not only to the state itself, but also to state agents and state instrumentalities. Thus, courts must examine the essential nature and effect of the proceeding, the nature of the entity created by state law or the issue of whether a money judgment against the instrumentality would be enforceable against the state to determine whether the instrumentality should be treated "as an arm of the state." *Regents of the Univ. of Calif. v. Doe*, 519 U.S. 425, 429-30 (1997).

The Pennsylvania Department of Corrections (DOC) is an arm of the state for Eleventh Amendment immunity purposes. *See Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000). In their official capacities, the individual defendants are state agents who are entitled to Eleventh Amendment immunity with respect to damage claims. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989) (unless sued for injunctive relief, state officials in their official capacities are not "persons" for purposes of § 1983).

The Court of Appeals for the Third Circuit has held that Eleventh Amendment immunity is subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and

(3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law, that is, the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed.714 (1908). *Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citation omitted). Pennsylvania has not consented to waive its Eleventh Amendment immunity to being sued in federal court. 42 Pa. C.S. § 8521(b); *Chittister v. Department of Cmty. & Econ. Dev.*, 226 F.3d 223, 227 (3d Cir. 2000). The Supreme Court also has held that § 1983 does not abrogate states' sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 339-46 (1979).

As for the *Ex parte Young* exception, "…a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Service Comm'n of Md.*, 535 U.S. 635, 645 (2002) (citation omitted). Davis states that he is "seeking injunctive relief against the Defendants, collectively, enjoining these Defendants to replace or reimburse me for the cost of the damaged, non-functioning, now-confiscated television that my cellmate broke, and the missing personal property items identified herein." (Am. Compl. at 21.) However, the request makes clear that he is seeking damages, not prospective relief, that he has been released from the RHU and that his visitation privileges and lower bunk designation have been restored. Therefore, the *Ex parte Young* exception does not apply.

Thus, with respect to § 1983 claims against the Corrections Defendants in their official capacities, their motion to dismiss should be granted with prejudice.

b. First Amendment Retaliation Claim

The Corrections Defendants argue that Davis has failed to state a claim of retaliation in violation of his First Amendment rights.

Davis alleges that as soon as he commenced this action, his visitation privileges were terminated without justification, although he fails to identify who did so. He alleges that Mowrey then suggested that he should "sign off" on the grievance rather than receive a response, but Davis indicated that he wanted a response. Shortly thereafter, Hagan ordered his bottom bunk restriction and cane to be removed. Although the Amended Complaint is not entirely clear, drawing all inferences in Davis's favor, he appears to be alleging that this was done at Mowrey's direction or with his acquiescence as Mowrey later told Davis that he was moved from his bottom bunk because his "paperwork had expired" and then threatened to move Davis from the G Block if he filed a grievance.

A retaliation claim requires allegations that (1) the plaintiff engaged in a constitutionally protected activity; (2) he or she suffered, at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

The Corrections Defendants do not dispute that Davis meets the first element. *See Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000) (filing of a civil rights suit is protected activity); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (allegation of false charge of misconduct in retaliation for filing complaints is conduct protected by the First Amendment).

They contend, however, that Davis losing his visitation privileges, the revocation of his bottom bunk designation and the subsequent threats to move Davis from the G Block do not constitute "adverse actions." Their argument is based on the premise that inmates do not have a right to be housed in a particular area of a facility, *Mays v. Kosinski*, 86 A.3d 945, 949 (Pa. Commw. 2014), and that visitation privileges are a matter left to the discretion of prison officials,

*Carey v. Johnson*, 2008 WL 724101, at *10 (W.D. Pa. Mar. 17, 2008). Although they are correct as far as it goes, "[r]etaliation may be actionable, however, even when the retaliatory action does not involve a liberty interest." *Allah*, 229 F.3d at 224 (citations omitted). Thus, the fact that visitation privileges and bottom bunk designations are matters within the prison's discretion does not mean that they can be employed as retaliation for a prisoner exercising his First Amendment rights. *See Cooper v. Hoover*, 2006 WL 3544711, at *2 (M.D. Pa. Dec. 8, 2006) (inmate who alleged he was denied visits from his daughter in retaliation for challenging his sentence and filing grievances stated a claim under the First Amendment); *Dippolito v. United States*, 2015 WL 9308238, at *7 (D.N.J. Dec. 21, 2015) (prisoner who filed grievances and was retaliated against by being improperly denied a bottom bunk stated a claim), *aff'd*, 704 F. App'x 199 (3d Cir. 2017). Thus, at this stage of the proceedings, these allegations are sufficient to represent adverse actions.

The Corrections Defendants' additional contention that Davis does not allege a causal connection between these events is unpersuasive. In fact, he has alleged that as soon as he commenced this action, his visitation privileges were terminated, and shortly after he submitted a grievance about this matter, his bottom bunk approval and cane were taken away and he was told he would be moved from the G Block if he filed another grievance. Thus, he has adequately alleged a First Amendment retaliation claim against Mowrey.

However, as Davis fails to identify Mowrey, or any other defendant, as responsible for taking away his visitation privileges, this aspect of this retaliation claim should be dismissed without prejudice and with leave to amend.

c. Eighth Amendment Claim

The Corrections Defendant also move to dismiss Davis's Eighth Amendment claim

14

relating to his transfer to the RHU.[7]

The Supreme Court has held that "[i]t is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). Thus, a transfer of a prisoner to the RHU alone does not violate the Eighth Amendment. *See Williams v. Armstrong*, 566 F. App'x 106, 109 (3d Cir. 2014) (because the Eighth Amendment applies only when a deprivation results in the denial of "the minimal civilized measure of life's necessities," placement of prisoner in RHU for 112 days alone, without allegation that he was denied life's necessities, did not state a claim for relief); *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997). Moreover, Davis acknowledges that he was not transferred to the RHU randomly, but in response to the PREA complaint that was being investigated. Therefore, with respect to Davis's Eighth Amendment claim, the motion to dismiss should be granted with prejudice as amendment would be futile.

### d. Fourteenth Amendment Claims

Davis alleges procedural due process and equal protection claims under the Fourteenth Amendment. The Corrections Defendants contend that he cannot state a claim under either of these theories.

### i. *Procedural Due Process*

The Supreme Court has held that states may create liberty interests which are protected by the procedural due process clause, but these interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and

---

[7] In his brief in opposition to the motion to dismiss, Davis asserts that his claim is not based solely on his placement in the RHU, but on the "totality of the circumstances." (ECF No. 60 at 14.) However, a review of the Amended Complaint shows that Davis has made no allegations concerning the conditions of confinement.

significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citations omitted). "Discipline by prison officials in response to a wide range of misconduct falls within the expected [parameters] of the sentence imposed by a court of law." *Id.* at 485. Based on *Sandin*, the Court of Appeals held in *Griffin* that an inmate who was held in administrative custody for 15 months while a charge that he raped a guard was being investigated did not suffer "atypical and significant hardship." 112 F.3d at 706-08. *See also Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (seven months of disciplinary confinement did not present an atypical and significant hardship).

In this case, Davis was held in administrative custody while the PREA complaint was investigated. For all of the reasons identified by the Court of Appeals in *Griffin*, such circumstances did not demonstrate an "atypical and significant hardship." Davis contends that the Corrections Defendants "knew or show have known" that Clancy's PREA complaint against him was false, but there is no basis for holding any of the Corrections Defendants liable for investigating these allegations. In addition, Davis cannot base his claim on the alleged violation of a DOC procedure, namely, keeping him in the RHU for a short period of time after the conclusion of the investigation in contravention of DC-ADM 802. *See Lee v. Schrader*, 2014 WL 2112833, at *5 (W.D. Pa. May 20, 2014) (no claim based on failure to follow a DOC procedure).[8] Therefore, with respect to the procedural due process claim, the motion to dismiss should be granted. Because amendment would be futile, the dismissal should be with prejudice.

---

[8] He also contends that he "was deprived of personal property valued at several hundred dollars without notice and a meaningful opportunity to be heard *prior* to the deprivation." (ECF No. 60 at 15) (emphasis added.) However, the Supreme Court has held that, whether loss of property is negligent or intentional, "the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy." *Hudson v. Palmer*, 468 U.S. 517, 534 (1984).

### ii. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Corrections Defendants contend that, despite Davis's general allegations that they violated his rights based on their personal biases against him as an African-American, a sex offender and someone with a disability, Davis provides no specific facts to support these speculative assumptions and does not allege in what respects he was treated differently from others who are similarly situated.[9] *See Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) ("Williams claimed only that his civil rights were violated by defendants of the opposite race, but that is insufficient to state an equal protection claim."); *Jean-Pierre v. Holt*, 2009 WL 890937, at *7 (M.D. Pa. Mar. 31, 2009) (Jean-Pierre alleged that he was temporarily transferred to the SHU for violating prison regulations and denied the ability to present witnesses or to ensure that the videotape evidence was reviewed, but did not allege that similarly situated inmates received more favorable treatment, so he could not state an equal protection claim), *aff'd sub nom. Jean-Pierre v. Gubbiotti*, 417 F. App'x 120 (3d Cir. 2011).

The Court agrees that Davis has failed to state a claim for violation of his right to equal protection because he pleads no facts that would support such a claim. However, the Court cannot conclude that amendment would be futile. Therefore, the motion to dismiss should be granted without prejudice and with leave to amend this claim.

---

[9] The original Complaint did not contain an equal protection claim.

17

e. Individual Involvement

The Court of Appeals has held that "to be liable under § 1983, each individual defendant "must have personal involvement in the alleged wrongdoing." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207. These allegations must be made with appropriate particularity. *Id.* Further, "a civil rights complaint is adequate where it states the conduct, time, place, and persons responsible." *Evancho,* 423 F.3d at 353. Moreover, in a civil rights case, "liability cannot be predicated solely on the operation of *respondeat superior*." *Rode*, 845 F.2d at 1207.

Although Davis states that he filed various grievances and staff request slips regarding his confinement in the RHU and the suspension of his visitation privileges and lower bunk restriction and purports to allege numerous claims about these issues, he has not stated a claim against Defendants Hnatkovich, Miller and Ginter, the individuals who reviewed these documents. "It is…well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v. Swartz*, 951 F. Supp. 2d 776, 782 (W.D. Pa. 2013). *See also Jefferson v. Wolfe*, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006); *Watkins v. Horn*, 1997 WL 566080, at *4 (E.D. Pa. Sept. 5, 1997); *Seldon v. Wetzel*, 2020 WL 929950, at *4 (W.D. Pa. Feb. 6, 2020), *report and recommendation adopted*, 2020 WL 924046 (W.D. Pa. Feb. 26, 2020).

Thus, Davis has failed to state a claim against Hnatkovich, Miller and Ginter based on their involvement in responding to his grievances and staff request slips. However, because it is uncertain if it would be futile to allow him to amend, the motion to dismiss these defendants

should be granted without prejudice and with leave to amend if he is able to plead facts that demonstrate that any of these defendants were personally involved in any alleged unlawful conduct.

With respect to Smith, Davis seeks to hold him liable as the Facility Manager for allegedly failing to train and supervise the other individuals. However, "it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Rather, the plaintiff must point to specific facts showing "a close causal relationship between the 'identified deficiency' and the 'ultimate injury.'" *Id.* Additionally, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Thus, Davis cannot assert a claim against Smith based on conclusory statements that he failed to train or supervise employees at the prison. *See Smith v. Indiana Cnty. Jail*, 2013 WL 425144, at *6 (W.D. Pa. Feb. 4, 2013) (when prisoner complained about constitutional violations by guards and imputed their violations to the warden, alleging her implementation of some unspecified policy or custom or failure to train, court held that, "such conclusory and speculative accusations fail to state a claim" on the part of the warden). Therefore, the motion to dismiss Smith should be granted, but without prejudice and leave to amend in the event that Davis can allege facts that would support a claim or claims against him.

Davis has also named Defendants Ivicic, Close and Barrows, the members of the PRC, who he alleges may have been able to order his release from the RHU. Thus, he has adequately pleaded that they had some personal involvement in the events. Nevertheless, as explained above, he has not stated a claim based upon being kept in the RHU while the PREA complaint

19

was being investigated. Thus, he has no plausible basis for asserting claims against Ivicic, Close or Barrows in this case. However, because it is uncertain that it would be futile to allow him to amend, the motion to dismiss these defendants should be granted without prejudice and with leave to amend if he is able to plead facts that demonstrate that any of these defendants were personally involved in any alleged unlawful conduct.

Finally, with respect to Defendants Rooney, Mowrey and Woomer, the Corrections Defendants contend that their sole involvement was that "Defendant Rooney brought [Davis] his property to the RHU, Defendant Mowrey talked with [Davis] about certain paperwork, and Defendant Woomer continued [his] placement in the RHU during the investigation into the PREA claims." (ECF No. 38 at 7.) This is not an accurate summary of the allegations against them in the Amended Complaint, however. Rather, Davis alleges that Rooney failed to bring him all of his property, that Mowrey retaliated against him and threatened him and that Woomer kept him in the RHU even after the investigation was concluded.

At the same time, however, as discussed above, because Davis's due process claim fails to state a claim on which relief may be granted, Woomer should be dismissed as a party. Similarly, Davis has failed to state a due process claim against Rooney, requiring the dismissal of the claim against him; however, as discussed below, he has stated a claim for negligence against Rooney.

Finally, as Davis has adequately pleaded Mowrey's personal involvement in the First Amendment retaliation claim and the ADA claim, the motion to dismiss him should be denied.

6.   <u>State Law Claims</u>

Davis alleges state law claims of negligence, intentional infliction of emotional distress

and willful misconduct.[10] The Corrections Defendants contend that these claims are barred by the doctrine of sovereign immunity.

Under Pennsylvania law, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310. "Exceptions to sovereign immunity are to be narrowly construed." *Dean v. Commonwealth, Dep't of Transp.*, 751 A.2d 1130, 1134 (Pa. 2000).

As noted by the Pennsylvania Supreme Court in *Justice v. Lombardo*, 208 A.3d 1057 (Pa. 2019): "Our intermediate appellate courts have held that these protections shield an employee of a Commonwealth agency from the imposition of liability even for intentional torts. In the present case, it is undisputed that Trooper Lombardo, as an employee of the [Pennsylvania State Police], is entitled to the protections of sovereign immunity for conduct within the scope of his duties, subject only to certain exceptions not applicable here." *Id.* at 1067 (citations omitted). There are ten exceptions to sovereign immunity, nine of which clearly do not apply here. 42 Pa. C.S. § 8521(a), § 8522(b).[11]

---

[10] In addition, Davis cites various provisions of the Pennsylvania constitution and the "Pennsylvania Restatement (Second) of Torts." As to the former, federal courts regularly hold that there is no private cause of action for monetary damages for violations of Pennsylvania Constitutional rights. *See, e.g., Spell v. Allegheny Cnty. Admin.*, 2015 WL 1321695, at *4 (W.D. Pa. Mar. 24, 2015); *Yunik v. Wetzel*, 2014 WL 5426198, at *8 (W.D. Pa. Oct. 22, 2014). In addition, Pennsylvania courts have held that there is no waiver of sovereign immunity for claims based upon the Pennsylvania Constitution. *See Faust v. Com., Dep't of Revenue*, 592 A.2d 835, 839-40 (Pa. Commw. 1991). As to the latter, there is no cause of action created simply by citing to the "Pennsylvania Restatement (Second) of Torts." Rather, the courts of Pennsylvania have adopted various provisions of the Restatement for purposes of defining torts in the state. *See, e.g., Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 335 (Pa. 2014) (declining to adopt the Restatement (Third) of Torts: Products Liability).

[11] Davis cites what he refers to as the exception for "dangerous conditions." However, he appears to be referring to the subsection covering "potholes and other dangerous conditions," 42 Pa. C.S. § 8522(b)(5), which has no application to the facts of this case.

21

Pennsylvania courts have held that "intentional tort claims … are not within the narrow exceptions set forth in 42 Pa. C.S. § 8522(b)." *Faust v. Commonwealth Dep't of Revenue*, 592 A.2d 835, 839 (Pa. Commw. 1991). *See also Ioven v. Nestel*, 150 A.3d 571, 574 (Pa. Commw. 2016). "Even where a plaintiff asks for monetary damages against a defendant in his individual capacities, sovereign immunity applies." *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (citation omitted). "Sovereign immunity applies to intentional and negligent torts." *Id.* (citation omitted).

Davis cites 42 Pa. C.S. § 8550, which states that, in an action against a *local* agency or employee, immunity is lost when their actions represent a "crime, actual fraud, actual malice or willful misconduct." This statute is not applicable in this case because all of the defendants are state employees, not local employees. *See Yakowicz v. McDermott*, 548 A.2d 1330, 1333 & n.5 (Pa. Commw. 1988) (Commonwealth employees are immune from liability even for intentional torts but that local agency employees lose their immunity defense where their actions constitute a crime, actual fraud, actual malice or willful misconduct), *appeal denied*, 565 A.2d 1168 (Pa. 1989).

The Corrections Defendants have not addressed Davis's negligence claim or § 8522(b)(3), which relates to "the care, custody or control of personal property in the possession or control of Commonwealth parties, including ... property of persons held by a Commonwealth agency." Davis has alleged that Rooney and John Does 1 and 2 negligently failed to bring all of his personal property to him in the RHU. Sovereign immunity does not bar a negligence claim based on this allegation.[12] *See Williams v. Stickman*, 917 A.2d 915, 918 (Pa. Commw.), *appeal denied*, 917 A.2d 915 (Pa. 2007) (prison officials could not assert sovereign immunity with

---

[12] This does not apply to the damage to the television set, which Davis asserts was caused by Clancy, and was not within the Corrections Defendants' care, custody or control.

respect to damage to inmate's television).[13]

Therefore, with respect to Davis's state law claims of intentional infliction of emotional distress and willful misconduct, the motion to dismiss should be granted. Because amendment would be futile, the dismissal should be with prejudice. With respect to his negligence claim against Rooney relating to property not brought to him in the RHU, the motion to dismiss should be denied.

III. **Conclusion**

It is respectfully recommended that the motion to dismiss of the Corrections Defendants should be granted in part and denied in part as follows:

1) Defendants' motion to dismiss should be granted with prejudice with respect to the following claims and parties:

- All § 1983 claims against the Corrections Defendants in their official capacities.

- All claims against Defendant Woomer.

- All federal claims against Defendant Rooney.

- Claim invoking the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution.

- Claim invoking the Oath or Affirmation Clause of Article VI of the United States Constitution.

- Eighth Amendment claim.

- Fourteenth Amendment due process claim.

---

[13] Whether Davis could otherwise state a claim for negligence has not been addressed by the parties and cannot be resolved on the current record. To the extent that he is alleging that his property was intentionally not provided to him, the claim would be for conversion, not negligence, and would be barred by sovereign immunity. *See Williams*, 917 A.2d at 917. On the other hand, he has alleged that he tried to file a grievance related to a claim for missing property but was prevented from doing so when the officers who packed his property failed to provide him with a form DC-153A, personal property inventory sheet. To this extent, he may be able to state a negligence claim.

- Claims asserted under 42 U.S.C. §§ 1981 and 2000d.

- Claims asserted under the Pennsylvania Constitution.

- Claims asserted under "Pennsylvania Restatement (Second) of Torts."

- State law claims of intentional infliction of emotional distress and willful misconduct.

2) Defendants' motion to dismiss should be granted without prejudice and with leave to amend regarding the following claims:

- Fourteenth Amendment equal protection claim.

- Claims asserted under §§ 1985 and 1986.

- All claims against Defendants Smith, Miller, Ginter, Hnatkovich, Ivicic, Close and Barrows.

3) Defendants' motion to dismiss should be denied as to:

- First Amendment retaliation claim against Defendant Mowrey.

- ADA claim against Defendant Mowrey in his official capacity.

- Negligence claim against Defendant Rooney.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by August 8, 2022.  Any party opposing the objections shall file a response by August 22, 2022. Failure to file timely objections will waive the right of appeal.


Dated: July 22, 2022

s/ Patricia L Dodge
PATRICIA L DODGE
United States Magistrate Judge


cc:    Keith Vernon Davis
       NF-9296
       SCI Houtzdale
       209 Institution Drive
       Houtzdale, PA 16698